IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GREEN EDGE ENTERPRISES, LLC )
 ) Case No. 4:02CV00566TIA
   Plaintiff, )
 )
    v. )
 )
RUBBER MULCH ETC. LLC, et. al. )
 )
   Defendants )
 )
 )
AND RELATED CLAIMS )
 )
 )

## RUBBER RESOURCE'S TRIAL BRIEF

### Preliminary Statement

 The main players in this case are Green Edge and its principals, Lee Greenberg and Judy Smith and International Mulch and its president, Michael Miller (collectively "the Lanham Act Defendants"). Green Edge is the holder of the patent at issue in this case, U.S. Pat No. 5,910,514 (the '514 Patent), for the claimed invention of colored rubber ground cover. International Mulch was, for much of the period from 2001 through 2008, the claimed "exclusive licensee" of the '514 Patent for most of the United States.

 The evidence will show that the Lanham Act Defendants have both known since at least 2002 that the '514 patent was invalid and that the assertion of rights under the patent was objectively baseless. The evidence will further show that, notwithstanding that knowledge, the

Lanham Act Defendants, both together and separately, engaged in unfair trade practices, including deceiving the public that they had a patent monopoly in the marketplace and that International Mulch was the sole non-infringing source of synthetic rubber mulch, for the express purpose of intimidating potential purchasers of rubber mulch into buying from International Mulch instead of others, including Rubber Resources.

Consistent with the bad faith plan to drive other companies out of the business, Green Edge's claims of infringement in this litigation were made without investigation; without properly reviewing or investigating the relevant prior art and without investigating whether Rubber Resources in fact infringes the '514 patent.  Rubber Resources has repeatedly informed the Lanham Act Defendants that Rubber Resources' method of manufacture is identical to the method set forth in a patent (the Jakubisin or '172 patent) that was issued prior to the '514 patent for the manufacture of a ground cover made from colored rubber.   If the '514 Patent does not claim what is taught in the '172 patent, then Rubber Resources practicing the invention of the '172 patent cannot, as a matter of law, infringe the '514 patent.   If enforcement of the '514 patent would prevent Rubber Resources from practicing the prior art of the '172 patent, then as a matter of law the '172 patent anticipates and the '514 patent is invalid.  Either way, if Rubber Resources practices the '172 teachings, it cannot, as a matter of law, have infringed the '514 patent.

Rubber Resources claims that the latter is the case:  the '514 patent is invalid by virtue of the anticipating prior art of the '172 patent[1] and the Lanham Act defendants have known this for

---

[1]     Following the issuance of the '514 patent, Green Edge filed several "continuations-in-part," seeking improvements or modifications of the claimed synthetic rubber mulch.  Not until September of 2008 did Green Edge disclose the Jakubisin patent (which it learned about in 2003) as prior art on any C-I-P application.  On Nov. 10, 2008, less than two months after Jakubisin was disclosed as prior art, the Patent Examiner issued an office action which stated in relevant part " .

years, well before filing this lawsuit and prosecuting it against Rubber Resources.

In sum: the evidence in this case will show that: a) Green Edge was originally told by the Patent Office that synthetic rubber mulch was an obvious invention, overcame that objection by falsely disclaiming an element - the binder - that this court later found was an essential element of the '514 patent claims; b) the Lanham Act Defendants have known of invalidating prior art since 2002, but rather than investigating it chose to ignore it, hide it and cover it up in order to; c) preserve Green Edge's lucrative licensing fee by bludgeoning other companies in the industry into non-existence through the unfair trade practice of asserting that only International Mulch could sell non-infringing synthetic rubber mulch.

The evidence will show that from 2001 through the end of 2010, International Mulch sold significant volumes of colored rubber ground cover and Green Edge collected substantial licensing fees, while committing bad faith unfair trade practices to drive at least three companies - Pierceton Rubber, Groundscape and Rubber Mulch (of North Carolina) out of business.  Rubber Resources' expert, Lynn Jones, will testify that he examined financial information provided by Green Edge and International Mulch, applied the Lanham Act's provisions for the calculation and assessment of damages for these unfair trade practices and determined that Rubber Resources is entitled to damages of $8,350,421 from International Mulch and $2,363,361 from Green Edge. Moreover, under the Lanham Act, these damages may be trebled in this case.

---

. . Claims 1, 2, 5, 6 and 14 are rejected under 35 U.S.C. 102(b) as being clearly anticipated by Jakubisin et al (US 5,543,172)."

## FACTS

The evidence that will be elicited at trial is summarized below, and shows that the Lanham Act Defendants engaged in a pattern of activity designed to enrich themselves and destroy the business of others who were making colored rubber ground cover by falsely claiming the protection of an invalid patent.   These  actions were taken in bad faith and in violation of the provisions of Section 43(a) of the Lanham Act (15 U.S.C. 1125).  Rubber Resources is entitled under Section 35(a) of the Lanham Act to recover for the wrongful actions of International Mulch, Green Edge, Lee Greenberg, Judy Smith and Michael Miller.

I. **Rubber Resources will Prove that the Lanham Act Defendants Knew that the '514 Patent was Unenforceable, but Continued to Make Misrepresentations about their Market Monopoly under the Patent**

The '514 patent is invalid.  The specifics of their guilty knowledge and false marketplace statements are set forth below:

A. **The Lanham Act Defendants were Fully Aware that the '514 Patent is Invalid and Unenforceable**

The evidence will show that, when Green Edge named Rubber Resources as a defendant in this patent case in January of 2005, the Lanham Act Defendants were in possession of information regarding prior inventions that rendered the '514 patent invalid and further that this they knew that experienced patent counsel and one court had concluded that these prior inventions invalidated the '514 patent.   The Lanham Act Defendants agreed that Green Edge would sue Rubber Resources after International Mulch identified Rubber Resources as one of three companies that it

particularly wished to take out of play in the marketplace.  This behavior is a bad faith violation of Section 43(a) of the Lanham Act.

      **1.      Green Edge Deceived the Patent Office, Making an Untrue Disclaimer, when the Patent Office Found the '514 Claims Obvious and Unpatentable Because of Prior Art**

Judy Smith and Lee Greenberg applied for the '514 patent on October 1, 1997.  Green Edge has stipulated that the patent application date of October 1, 1997 is date of constructive reduction to practice and is therefore the "date of invention" for the '514 patent.

The Patent Office examiner initially rejected all eight claims of the '514 patent, finding that they were obvious pursuant to 35 U.S.C. §103, especially in light of the prior art Byrne patent (USP 5,396,731), which claimed a synthetic mulch pad constructed of ground, shredded or buffed scrap tires.  Defendants opposed  the Patent Office rejection by arguing binder was not a limitation of any '514 claims:  "None of the claims in the present application mention, much less require, a binder or bonding agent.  The requirement of binder in addition to rubber particles and colorant is an additional element not necessary or required in the present invention. . . This alone patentably distinguishes the present invention from the mulches described in the cited references.  The mulches of the cited references cannot be made without a binder and as such do not make obvious the present invention.."   During the course of discovery, however, Judy Smith (one of the claimed inventors) admitted that a  binder is in fact a necessary element of the invention.  The evidence will also show that Rubber Resources *does* use a very sticky binder in the manufacture of its product, and that it could not manufacture its colored rubber ground cover without such a binder.

The Patent Office relied on the disclaimer and allowed the '514 patent.   In the application for the '514 patent, Smith and Greenberg did not disclose U.S. Patent No. 5,543,172 (the "Jakubisin patent" or the "'172 patent") nor did they disclose the prior art of the synthetic mulch manufactured and sold by others prior to the date of the '514 patent, October 1, 1997.

**2**.      **Green Edge and International Mulch were Told by a Federal District Court in 2003 that the Invention is Obvious, but Pay the Beneficiary of that Decision $58,000 to Withdraw its Claim of Invalidity**

On April 4, 2002, Green Edge and International Mulch sued DSM Landscape Products and Total Marketing Associates, Inc. (collectively Pierceton Rubber") for infringement of the '514 patent.  The suit was filed in the United States District Court for the Eastern District of Missouri, Eastern Division, Case No. 4:02CV000482MLM.

Pierceton Rubber moved for summary judgment on the issue of patent invalidity, supported by declarations of four individuals who had manufactured and sold colored rubber ground cover, made of colored recycled tire scraps, prior to the invention of the '514 patent.   On May 12, 2003, United States Magistrate Judge Mary Ann L. Medler ruled that Pierceton Rubber had established the invalidity of the '514 patent by "clear and convincing evidence" and specifically that the '514 invention was obvious based on the prior manufacture and sale of synthetic rubber mulch.   Judge Medler did not consider the prior art of the Jakubisin patent, which had not been presented to her.

Following the entry of this Order, Green Edge asked for the order to be set aside to allow it to conduct additional discovery regarding the invalidating prior art and the court agreed to vacate the order.  Green Edge and International Mulch never followed up on their request, however, and

never conducted any investigation of the identified prior art until *November of 2010,* when they attended the deposition of Martin Javorek scheduled by Rubber Resources in preparation for this trial.

Instead of  investigating the identified prior art, Green Edge entered into a settlement with Pierceton Rubber in which Pierceton Rubber agreed to withdraw its claim that the '514 patent was invalid in exchange for a payment by Green Edge of $58,000.  John Bruneau, of Pierceton Rubber, will testify that he was willing to agree to this course of action because he needed the money - the cost of defending against the infringement claims had driven him out of business. International Mulch was well aware of both the litigation and its resolution - International Mulch was a party to the litigation and provided the funds necessary to pay off Pierceton Rubber.  Based on the parties' stipulation (rather than on any new information that would contradict the findings in the original order invalidating the '514 patent), the court entered an Order dismissing the Pierceton Rubber litigation.

### 3.     Michael Miller Discussed the Jakubisin Patent with Dale Hawker and Attempted to Induce Him Not to Challenge the '514 Patent's Validity

In August of 2003, shortly after the settlement with Pierceton Rubber, Michael Miller, (International Mulch's president) met with Dale Hawker (Rubber Resources president) at Rubber Resources' offices in Florida.  During that meeting, Mr. Miller told Mr. Hawker that International Mulch's lawyers believed that Judge Medler's decision was correct and that the '514 patent was invalid.

Mr. Hawker then told Mr. Miller that there was another problem with the '514 patent.  In

addition to the prior art on which Judge Medler based her decision of invalidity, Mr. Hawker had

further searched the United States Patent and Trademark Office records and found the Jakubisin

patent.  Jakubisin is clearly prior art that should have been disclosed to the Patent Office in the

application for the '514 patent:  it was filed on March 18, 1994, and issued on August 6, 1996,

predating the '514 application by over a year.  Mr. Hawker gave Mr. Miller a copy of the

Jakubisin patent, which teaches a colorized ground covering made of rubber particles obtained by

shredding used tires ('172 patent, col. 1, ln 6-9) that are colored with a color pigment solution that

is predominately water based, the exact "invention" later claimed by the '514 patent.  After this

discussion, Mr. Miller tried to induce Dale Hawker to "bury" the '172 patent, in exchange for

which Rubber Resources would be given a license under the '514 patent for a token fee.  Mr.

Miller suggested to Mr. Hawker that if the '514 patent were kept in place, it could be used to

prevent competitors of both International Mulch and Rubber Resources from entering into the

marketplace.  Mr. Hawker declined the proposal.


**4.    International Mulch was Advised by its Lawyers that the '172 Jakubisin Patent Invalidates the '514 Patent**

Mr. Miller took the '172 patent back to St. Louis with him and gave it to International

Mulch's patent lawyers at Harness Dickey to analyze.  Rudolph Telscher, a lawyer from Harness

Dickey, analyzed the '172 patent and sent an email to Scott Greenberg (a lawyer who is Lee

Greenberg's brother and was acting on behalf of Green Edge) on October 3, 2003 which stated in

part:

> The above patent [5,543,172/Jakubisin] has recently been brought to our
> attention by a third party.  We have now analyzed the patent.  In our view, this

will impact discussions next Thursday.

The email went on to suggest that Green Edge should have the patent analyzed by Dave

Jinkins "or another patent attorney."

Further email exchanges make it clear that International Mulch's counsel believed

that Jakubisin invalidated the '514 patent, as evidenced most graphically by International

Mulch's decision, on  August 19, 2004, to  file a complaint in federal court seeking a

declaratory judgment that Green Edge's '514 patent is invalid as anticipated by Jakubisin

and also anticipated and obvious in light of the prior art disclosed to Judge Medler.

### 5.     International Mulch Sues Green Edge to Obtain Judgment that the '514 Patent is Invalid

In 2004, Green Edge sued International Mulch for payments due under its license

agreement.  *See, Green Edge Enterprises, L.L.C. v. International Mulch Company, Inc. et*

*al.,* Case No. 4:04-CV-01301- MLM (United States District Court for the Eastern District

of Missouri).  On November 1, 2004, International Mulch counterclaimed to invalidate

the '514 patent, alleging that Green Edge knew that "the claims of the '514 patent were

and are invalid;" that Green Edge "was aware of U.S. Patent 5,543,172 [Jakubisin] and

knew or should have known that the '172 patent invalidated the claims of its '514 patent"

and "Green Edge was and is aware that a Court in this District had earlier found that the

claims of the patent were invalid in light of other prior art references, but had vacated that

decision on procedural grounds."  International Mulch further alleged that, with

knowledge of the invalidity of the '514 patent, Green Edge contacted customers and

distributors of International Mulch and falsely claimed that the offer or sale of International Mulch's products infringes the claims of the '514 patent.

On April 28, 2005, Green Edge and International Mulch settled their dispute. Green Edge agreed to reduce the amount of past royalties owed by International Mulch and agreed to accept a payment of $250,000 to be paid in six installments and the parties entered into a new licensing agreement that reduced the royalty fee from 5% to 3%. (2005 License Agreement, ¶ 4.1, 4.2).  As part of the settlement, International Mulch required Green Edge to prosecute patent infringement claims against three companies singled out by International Mulch - Rubber Mulch, Rubber Resources and GroundScape - to be targeted as defendants.

The result was this lawsuit, which has been prosecuted by Green Edge and funded by International Mulch with full knowledge (indeed, in the case of International Mulch, acknowledgment and admission) that the prior art invalidates the '514 patent.  It was done in bad faith, for the express purpose of bolstering International Mulch's position in the marketplace by informing customers that it was the only non-infringing source of colored rubber ground cover and threatening litigation against anyone who bought from another source.  These tactics have driven two of the three defendants out of business and have severely harmed Rubber Resources, the sole remaining party.

6.     **Smith and Greenberg Applied for Modifications to the '514 Patent; but were Told by the Patent Office that the Synthetic Rubber Mulch Is Obvious**

On June 4, 2001, Lee Greenberg and Judy Smith filed a continuation-in-part for the '514 patent application No. 09/74,178.  A continuation-in-part is an application for a new patent that is a modification of an earlier granted patent that contains all or most of the original patent but seeks some slight modification or alteration to the base claimed invention; for example, this continuation-in-part continued to claim the same synthetic mulch as the '514 patent but sought to add a fire retardant material.

On April 3, 2002, the Patent Office rejected all the claims of the continuation-in-part.  As with the initial rejection of the '514 patent, the Patent Office concluded that claimed invention was unpatentable because of Byrne (USP 5,396,731):

> Byrne discloses a suitable mixture (for a mulch pad) comprising (a) rubber granules and buffings, (b) fiber, (c) binder, (d) colorant and (e) catalyst (col. 5, lines 10-16).  The amounts of these ingredients encompass those of the same ingredients encompassed by the above claims.   It is true that Byrne is directed to a flexible mulch pad; but it would still be obvious to one of ordinary skill in the art to use the above composition of Byrne to prepare (claimed) synthetic mulch.  Furthermore, since Byrne mixes all above ingredients in a container, it is obvious that the resin and colorant form a coating on the rubber granules. Teachings of Byrne therefore obviously lead one to claimed invention.

Greenberg and Smith protested this declination and asked the Patent Office to reconsider its rejection.  On November 18, 2005, the Patent Office issued a second Office Action in which the Patent Office declined to withdraw its conclusion that all eight of the claims were obvious:

> The reference to Byrne (US 5,396,731) teaches a "mulch."  The step from pad to powder is deemed to be obvious, shown especially by that particular word's use

(mulch), and has not been shown to be of particular significance since the composition of the reference performs the identical function as recited and claimed herein.

Greenberg and Smith thereafter abandoned this CIP and did not file a response to the Patent Office's second rejection.

On May 26, 2006, Greenberg and Smith filed yet another continuation-in-part of the '514 patent–Patent Application No. 11/442086.  In connection with this new CIP, on September 25, 2008, they filed an Information Disclosure Statement with the Patent Office that ***for the very first time*** disclosed U.S. Patent No. 5,543,172, the Jakubisin patent, as relevant prior art to the patent office.

On November 4, 2008, the Patent Examiner summarily rejected the claims of the '514  continuation-in-part as being anticipated by the Jakubisin patent.  The deadline for responding was February 10, 2009.  Green Edge did not respond, causing the application to become abandoned.

**B.     Despite the Patent Office, Courts and their Own Lawyers Finding that the '514 Patent is Unenforceable, the Defendants Embark on a Plan of Unfair Trade Practices by Asserting a Claim of a Monopoly Over Colored Rubber Ground Cover.**

International Mulch's principals, Cindy and Mike Miller, first proposed in October of 2000 that they would acquire licensing rights from Green Edge for $1,005,000, entered into a licensing agreement to that effect on September 27, 2000.   Almost immediately thereafter, and continuing over the years, International Mulch through Mike and Cindy Miller complained to Green Edge that, after investing so much money for licensing and royalties, it was still getting

'killed' by the numerous competing manufacturers of synthetic rubber mulch.  International

Mulch repeatedly exhorted Green Edge to "do something" about the competition through more

diligent enforcement of the '514 patent.  For this reason - to keep from getting "killed" by the

competition - International Mulch induced Green Edge to prosecute infringement claims against

three companies specified by International Mulch: Groundscape, Rubber Resources and Rubber

Mulch of North Carolina.


     **1.**     **The Lanham Act Defendants Make Misrepresentations to Buyers of Rubber Mulch that International Mulch and Other Licensees are the "Sole Source" of Non-Infringing Product.**

The evidence will show that the Lanham Act Defendants threatened Rubber Resources

with litigation if it did not immediately cease manufacturing and selling colorized rubber mulch

and attempted to "bury" the invalidating prior art by granting Rubber Resources a license to

manufacture its product and pay only a token royalty. The Lanham Act Defendants told Mr.

Hawker that Green Edge and its licensees of the '514 patent were the sole source of colored

rubber ground cover and that no one else could manufacture or sell colorized rubber ground

cover of any kind and that anyone manufacturing or selling colorized rubber ground cover would

be sued and put out of business.

    The evidence will also show that the Lanham Act Defendants have made similar

statements directly to major purchasers of synthetic mulch, such as Lowe's, and others: that

Rubber Resources was infringing a valid patent; that they must buy colored rubber ground cover

only from licensees under the '514 patent or risk infringement litigation themselves; and that

only International Mulch had a valid license.   Lowes, a national chain of home improvement

stores, had been buying colored rubber mulch from Rubber Resources but then after learning of

the patent litigation dropped Rubber Resources as a supplier.

      **2.**      **In Addition to Making Sole Source Claims to Specific Customers, International Mulch Asserted the Patent Monopoly Generally in the Marketplace, through Statements at Trade Shows, in its Brochures and in Other Publications**

The evidence will further show that, in addition to targeting specific customers with its

"sole source" and patent monopoly claims, International Mulch also made sure that the sole

source and patent monopoly claims were generally broadcast in the marketplace of likely and

potential customers.  It boasted of this exclusivity to its dealers and distributors.

Even after having been advised of the invalidity of the '514 patent and even after itself

having asserted the invalidity of the '514 patent in litigation against Green Edge, International

Mulch attended numerous trade shows, at which representatives of International Mulch

announced to anyone who would listen that International Mulch was the licensee under a patent

for the manufacture of colored rubber ground cover and the only legitimate source.  The claim of

patent and license rights was featured in International Mulch's brochures and other materials that

were distributed at these trade shows and otherwise in commerce.

In August of 2007, Cindy Miller was interviewed by the St. Louis Business Journal.  She

told the reporter that the licensed process was "key to the company's success" and that the

company's financial success was hampered by the legal bills they had incurred to defend the

licensing rights.  She was quoted as saying: "International Mulch currently is working with the

patent holder, Green Edge Enterprises of St. Louis, owned by Lee Greenberg and Judy Smith, on

three such actions."  This article was published in the St. Louis Business Journal and to this day

can still be easily found on the internet at the St. Louis Business Journal's website.

Claims of monopoly rights under a patent known to be invalid or unenforceable

constitute deceptive advertising and unfair trade practices under the Lanham Act.  Because

in this case the deceptive practices were done with full knowledge of the inaccuracy of the

statements, and with the specific intent of stifling International Mulch's competition,

pursuant to the Lanham Act damages provisions, the compensatory amount may be

trebled.  The testimony of Rubber Resources damages expert, Lynn Jones, will show that,

using the standards set forth in the Lanham Act for calculating damages, International

Mulch should be assessed in excess of $8,000,000 in damages and Green Edge in excess

of $2,300,000.

## THE LAW

I.      **The '514 Patent Claims are Invalid Because they are Anticipated,
        Obvious, Indefinite and not Enabled;**

Patents are a contract between the inventor and the public.  In consideration of the

inventor conceiving of a novel and nonobvious innovation and teaching it to the public,

the inventor is given a monopoly over the practice and commercial exploitation of the

claimed invention for a limited time.

The entitlement to the monopoly is therefore predicated on three bedrock

-15-

principles of patent law.  First, the invention must not already exist; if it does, then the

patent is "anticipated" by the prior existence and is not patentable under 35 U.S.C. § 102.

Second, if the exact innovation does not already exist, that is still not sufficient - the

claimed invention must also be "non-obvious."  The claimed invention is unpatentable

under 35 U.S.C. § 103 if the hypothetical person with ordinary skill in the art would find

the claimed invention obvious in light of all of the existing products or ideas in the art.

Third, under 35 U.S.C. § 112, the invention must be taught with to sufficiently enable its

use and must be claimed with sufficient definite detail to describe to the public the

legitimate metes and bounds of the invention.

The '514 patent fails on all three grounds.  The invention is not novel - the functionally

and structurally identical product was taught in the '172 Jakubisin patent and at least four other

people were manufacturing and selling colored rubber mulch in the United States prior to the

'514 invention date.  Any difference between the prior art and the '514 patent - and Defendants

submit that there is none - is so trivial as to be obvious, as the Patent Office originally believed

when it first declined to issue the '514 patent and confirmed when it found the last CIP submitted

by Green Edge to be anticipated by Jakubisin and as Judge Medler confirmed with her findings

of obviousness.  "Looks like" natural mulch have been found by the Patent Office and

acknowledged by Green Edge to be indefinite, but that term remains in Claims 1-4.  Green Edge

asserts that the sole way that the '514 invention can be distinguished from Jakubisin is because

Jakubisin does not "imitate natural mulch."  Claim 8 of the '514 patent makes no such claim so

therefore, based upon Green Edge's position, claim 8 must necessarily be anticipated by

Jakubisin.  This leaves claims 5-7 which includes "imitate natural mulch", but if the the '514 patent specifications fail to provide the necessary enablement to teach how to achieve this supposed aspect they must fail.  The evidence clearly demonstrates that the '514 patent should be invalidated in its entirety.


### A.     Each Claim of the '514 Patent Is Anticipated by The Prior Art

"Anticipation" is described in 35 USC 102(a)[2], which specifies that a patent shall not be issued if:

> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this country or a foreign country, before the invention thereof by the applicant for patent.

Pursuant to 102(a), "prior art" includes prior filed patents.  Prior art also includes products that were known or used in the United States prior to the invention date (in this case, October 1, 1997).

A patent claim is anticipated by the prior art if the metes and bounds of the claim are found, either expressly or inherently in a single prior art reference.  *Celeritas Technologies. Ltd. v. Rockwell Intl Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998).  Because each separate claim of a patent contains a different limitation or set of limitations from the other claims, the anticipation analysis must be carried out separately, on a claim by claim basis.  An invention is "anticipated by prior art" - or in layman's terms, not sufficiently novel to warrant patent protection -  if  there is "no difference between the claimed invention and the reference (i.e., the prior use) as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Research Fdn. v.*

---

[2] Section 102(b) equally applies here because each of the Defendant's prior art references also predate the one year bar date requirement.

-17-

*Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir. 1991).

The '514 patent claims a product - a colored rubber ground cover made of ground, shredded or buffed scrap tires.  (Claims 1, 2, 3 and 8).  It also claims a method for making the colored rubber ground cover by adding a water based acrylic colorant to the rubber particles and thoroughly mixing the two to ensure complete color coverage.  (Claims 4, 5, 6 and 7).  None of these limitations is novel; each is anticipated by the Jakubisin '172 patent.[3]

The use of shredded, ground or buffed rubber tires to form an "unconsolidated fall zone" material for use as a colored rubber ground cover was taught by Jakubisin in the '172 patent; the '514 patent also contemplates the use of shredded ground or buffed scrap tires and describes the various possible uses of the product as follows:  "[t]he colored textured rubber materials can be used for a variety of different applications including use as a mulch **or as a playground surface**."  (Emphasis supplied.)  The '172 patent claims coloring the particles with an acrylic based colorant; the '514 patent likewise claims the use of a water based acrylic colorant. Claims 5, 6 and 7 of the '514 patent provides only that the rubber must be thoroughly mixed with sufficient colorant to completely cover the particles; the method of manufacture claimed in the '172 patent - dropping the particles through a fall zone while spraying them with colorant - is a way of adding colorant to the rubber particles to insure that they are covered completely.

The only distinction that Green Edge has ever made between the claims of the '172 patent

---

[3]   The affidavits of John Funk and Martin Javorek disclose that, prior to October 1, 1997, they had each known and used "synthetic rubber mulch" that was made of ground, shredded or buffed scrap tires and colored with a water based acrylic colorant.  These details are set forth at length in the Funk and Javorek affidavits.  Each of these prior art references, therefore, independently anticipates the synthetic mulch of the '514 patent.

and the claims of the '514 patent is that the '172 patent does not specify that the rubber particles must be sized, shaped and colored to so as to "imitate" natural mulch.   This difference is legally insufficient to distinguish the '514 invention from Jakubisin; as set forth below, this distinction is inherent in the size and shape of commercially available ground and buffed scrap rubber. Moreover, as set forth in Section 3 below, "looks like" has already been determined by the Patent Office to be indefinite.

The assertion that the rubber particles claimed by the '514 patent are of a different size, shape and appearance from those disclosed by the '172 patent is factually inaccurate.  Scrap tires are ground, shredded or buffed into small particles by various businesses that sell the resulting product commercially.  The evidence will show that International Mulch, the exclusive licensee under the '514 patent, buys its rubber particles from commercial scrap tire grinding businesses and does nothing to alter the size or shape of the particles before coloring them.  The '514 patent does not claim a method for altering the appearance of the scrap tires as they are made into particles of a size and shape to resemble natural mulch; rather, that quality is inherent in commercially available scrap tire grindings and buffings.

Moreover, under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed inventions, it anticipates.  *Mehl/Biophile Int'l Corp. v. Milgraum,* 192 F.3d 1362, 1365 (Fed.Cir. 1999) ("a prior art reference may anticipate when the claim limitations not expressly found in it are nonetheless inherent in it") *citing In re King*, 801 F.2d 1324, 1326 (Fed.Cir. 1986); *In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1349-50 (Fed.Cir. 2002).

-19-

If the allegedly novel claims of the '514 patent are inherent in the prior art, the "invention" of the '514 patent is not novel and is therefore not patentable, *whether or not* the inherent quality is expressly disclosed.  See, *In re Schreiber*, 128 F.3d 1473 (Fed.Cir. 1997)(it is "well settled that the recitation of a new intended use for an old product does not make it patentable; *Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 782 (Fed.Cir. 1985)*; Schering Corp v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1379 (Fed.Cir. 2003).

If granting patent protection to the '514 patent would allow Green Edge to exclude the public (including Rubber Resources) from practicing the prior art of Jakubisin, Javorek or Funk, then the '514 patent is anticipated by that prior art.  *Atlas Powder Company v. Ireco Inc.,* 190 F.3d 1342, 1346 (Fed. Cir. 1999).  Even if the prior art does not specifically assert that "looks like" natural mulch or can "imitate" natural mulch, this omission cannot avoid anticipation of the '514 patent if those characteristics are the natural result of the normal use of the prior art.  See, *Perricone v. Medicis Pharmaceutical Corp.,* 432 F.3d 1368, 1383 (Fed. Cir. 2005).

Every claim of the '514 patent requires the use of:  a) particles derived from ground or buffed scrap tires that are sized and shaped to have an appearance that allows them to substitute for natural mulch[4]; that b) is colored with a generic water based acrylic colorant[5].  Claim 4 additionally provides that the same generic colorant will be added to the same rubber particles and then thoroughly mixed.   The '172  patent likewise claims:  a) "rubber slivers" that are

---

[4] Claim 8 does not have this limitation, but the Court has construed the term "colored textured material" in such a way as to import this limitation into the claim.  However, a prior art reference that includes additional limitations beyond those in the claim also anticipates the claim.

[5] Claim 5 uses the broader term colorant, but a specific type of colorant, water based acrylic, anticipates the broader element of a generic colorant.

derived from ground or buffed scrap tires, which are inherently sized, shaped and dimensioned to resemble tree bark, pea gravel and the like; that are b) "encapsulated" - that is, coated - with a water based acrylic colorant; that is; c) added in such a way as to ensure that the particles of rubber are completely coated with the colorant.  The synthetic rubber mulch made by Funk and Javorek likewise incorporates each of these limitations, and the product manufactured by them both "looks like" natural mulch and was marketed and sold by them as a substitute for natural mulch prior to October 1, 1997.  Accordingly, there is no limitation of the '514 patent that is not also present, either expressly or inherently, in each of the prior art references of Jakubisin, Javorek and Funk.

The Jakubisin patent and the prior art references of Javorek and Funk were not disclosed to the Patent Office prior to the issuance of the '514 patent.  The existence of the prior art is undisputable; it is also indisputable that Jakubisin, Javorek and Funk disclose every limitation of each claim of the '514 patent.  As a matter of law, therefore, the '514 patent is invalid under 35 USC 102, as anticipated by the prior art.

.      **B.      Each Claim of the '514 Patent Is Obvious In Light of the Prior Art**

If an invention is novel - that is, it has not been anticipated by the prior art - then the invention must still not be found obvious in order to gain the benefit of patent protection. Obviousness is the test of whether the patent claims describe an invention that the legal fiction of a hypothetical person familiar with all of the prior art in the field ("person of ordinary skill in the art") would find obvious to create, in light of all the existing uses and knowledge in the field, or

fields, of the invention.

Section 103(a) of Title 35 provides, in relevant part:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Obviousness under 35 U.S.C. § 103 is a legal conclusion involving four factual inquiries: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness.'" *B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 72 F.3d 1577, 1582 (Fed.Cir. 1996) *quoting Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050 (Fed.Cir. 1988). "The proper approach to the obviousness issue must start with the claimed invention as a whole." *Kimberly-Clark Corporation v. Johnson & Johnson*, 745 F.2d 1437, 1448 (Fed.Cir. 1984) *citing* 35 U.S.C. § 103.

The proper standard for determining whether the "non-obviousness" requirement of section 103 has been met was recently clarified by the United States Supreme Court in *KSR Int. Co., v. Teleflex Inc.*, 127 S.Ct. 1727 (2007). In *KSR*, the Supreme Court held that the Federal Circuit was applying the four-pronged obviousness test more rigorously than the statute required, and mandated that a more flexible standard should be used. Among other things, the Court observed that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." Id. at 1731. The Court also observed:

-22-

> We build and create by bringing to the tangible and palpable reality around us new works based on instinct, simple logic, ordinary inferences, extraordinary ideas, and sometimes even genius. These advances, once part of our shared knowledge, define a new threshold from which innovation starts once more. And as progress beginning from higher levels of achievement is expected in the ordinary course, the results of ordinary innovation *are not the subject of exclusive rights under the patent laws.* Were it otherwise patents might stifle, rather than promote, the progress of the useful arts.

Id. at 1746 (Emphasis supplied.); see also, *Leapfrog Enterprises v. Fisher-Price*, 485 F.3d 1157, 1161 (Fed.Cir. 2007)("An obviousness determination is not the result of a rigid formula disassociated from the consideration of the facts of the case. Indeed, the common sense of those skilled in the art demonstrates why some combinations would be obvious and others would not.")

Under *KSR* and *Leapfrog*, the trier of fact must determine whether there is any innovative element of the '514 patent and if so, whether such innovation can be obviously derived by the application of common sense to the prior art (e.g., observing that commercially available ground tires look like natural mulch, or that playground fall zone material could easily have other ground cover applications) or whether such innovation is so trivial as to be obvious and is therefore not patentable.

The Patent Office believed that the synthetic rubber mulch of the '514 patent was obvious in light of Byrne, which disclosed a rubber mulch pad made of pieces of scrap rubber tires combined with Sheehan, that taught the use of a water based acrylic colorant for individual particles of synthetic mulch made from cellulose. The inventors overcame this objection by responding that the '514 patent did not require a binder, but this disclaimer was inaccurate. The colorant used in the '514 patent does, in fact, require a binder to cause the colorant to stick to the rubber; the same binder also causes the rubber pieces to clump together if they are not separated

-23-

to dry.  If Green Edge had in fact invented a colorant - Visichrome - that did not actually stick to itself and other things as it dried - that may well have been a valid invention.  Sadly, they had made no such breakthrough - the colorant used in the '514 invention is just ordinarily sticky acrylic paint.

The evidence relating to the  prior art that Rubber Resources will introduce at trial shows that each and every element of the '514 patent was known, used or practiced prior to October 1, 1997 the date of the Green Edge's "invention" of colored rubber ground cover.  The idea is not novel or inventive as required to justify the monopoly power of patent protection; it is obvious within the meaning of Section 103, as recently clarified by the Supreme Court in *KSR* and *Leapfrog*.  For these reasons, each and every claim of the '514 patent should be invalidated because the subject matter of the patent would be obvious, in light of the prior art.


**C.     "Look Like" is Indefinite and Therefore Makes Any Claim Including the Term Invalid.**

The other alleged difference - that the '172 patent does not expressly claim rubber particles that are sized, shaped and colored to look like natural mulch - is not a patentable difference.   Under  35 U.S.C. § 112, in order to obtain a patent an inventor must describe his invention with sufficient specificity and clarity that the public can ascertain the precise metes and bounds of the invention.    As set forth above, initially the Patent Office declined to issue the '514 patent because it was obvious in light of Byre.  The Patent Office also cited an additional ground for non-issuance - that the term "look like" was not sufficiently definite.  See also,

-24-

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed.Cir. 2005) (invalidating patent claim using "aesthetically pleasing" limitation regarding the appearance of a computer screen because it lacks the definiteness required of a patent claim)

In response to the Office Action finding that "looks like" is indefinite, Green Edge agreed to and represented it would delete the indefinite term.  Green Edge made some edits to the patent and submitted them to the Patent Office along with a representation the edits had been made. Green Edge did not, however, amend the patent as required.  In the patent as issued, claim 1 and its dependent claims 2 and 3 as well as claim 4 continue to refer to an invention that "looks like" natural mulch and are therefore indefinite.   Claim 5 and its dependent claims 6 and 7 include the term "imitates" natural mulch.  Claim 8 does not make either a  "look like" or imitate" distinction between the ground cover of Jakubisin  If the only ascertainable difference between the synthetic ground cover claimed in Jakubisin and the synthetic rubber mulch claimed under '514 is that the latter "imitates" natural mulch, Claim 8 is invalid per se, because it does not claim that distinction.  For the reasons set forth above, however, Claims 5 through 7 are nonetheless also invalid if that is the *only* distinction between Jakubisin and those claims, since the aspect of "imitating natural mulch" is either inherent in the prior art or not sufficiently taught in the '514 specification to meet the enablement requirement.

**II.     It is Well Settled Law from the Federal Circuit that Knowingly False Representations of Patent Validity and Sole Legitimate Source of Material Constitute a Violation of Section 43(a) of the Lanham Act, Entitling Rubber Resources to Damages**

As described above, Green Edge's prosecution of the '514 patent, and International Mulch's assertion of license/patent rights in the marketplace, were not made in good faith. Rather, they were the cynical assertion of an invalid patent, funded by International Mulch for the purpose of putting other companies in the industry out of business.  This is a bona fide unfair trade practice, as are statements to customers that International Mulch is the 'sole source' of non-infringing product.

**A.     International Mulch's  and Green Edge's False Marketplace Statements about the Validity and Enforceability of the '514 Patent were Made in Bad Faith and in Violation of Section 43(a) of the Lanham Act**

Section 43(a)  of the Lanham Act, 15 U.S.C. §1125(a)(1),  provides that:

(1) Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false or misleading description of fact, or false or misleading representation of fact, which -

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

This provision of the Lanham Act creates liability for anyone who attempts to enforce a patent, and/or engages in marketplace activities that falsely and misleadingly claim a patent monopoly.  *See, Zenith Electronics Corporation v. Exzec, Inc.,* 182 F.3d 1340 (Fed. Cir. 1999).

The Federal Circuit in *Zenith* set forth a five part test to determine whether alleged

-26-

activities violate section 43(a) of the Lanham Act.  These five elements are:  (1) the defendant made a false or misleading statement of fact in commercial advertising or promotion about the plaintiff's goods or services; (2) the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) the defendant caused the statement to enter interstate commerce; and (5) the statement results in actual or probable injury to the plaintiff.  *Id.*, at 1348. *Zenith* additionally added a sixth element when the wrongful acts involve the assertion of rights under a patent; under those circumstances, the plaintiff must also show that the actions were taken in "bad faith."

International Mulch's and Green Edge's enforcement of the '514 patent, and their claim of patent monopoly in the market place, meet all of the elements of a Lanham Act violation as set forth in *Zenith*.

### 1.     Green Edge and International Mulch Made False and Misleading Statements of  Fact in the Marketplace

As set forth above, both International Mulch and Green Edge repeatedly told potential customers that only licensees of the '514 patent could legitimately sell colored rubber ground cover and that International Mulch was then sole non-infringing source of the product.  These statements were false and misleading.

The prohibition in Section 43 is against misrepresentations made in "commercial advertising or promotion."  This provision of the Lanham Act is designed to, among other things, protect other companies in the market from misrepresentations which a defendant makes about

his own or another's products.  In order to be considered "commercial," speech need not closely resemble a typical advertisement; any economic motivation for making a misleading statement is "relevant to the inquiry."  *Semco v. Amcast,* 52 F.3d 108, 112 (6th Cir. 1995);  *Porous Media Corp. v Pall Corp.,* 173 F.3d 1109 (8th Cir. 1999).  International Mulch had a clear economic incentive for its baseless, false and misleading assertions of patent monopoly and status as sole legitimate source of colored rubber ground cover: in its own words, it was "getting killed" by other companies in the marketplace.  This economic incentive, together with the actual misleading statements made by International Mulch, satisfy the first element of the *Zenith*  test. *O'Keefe v. County of St. Clair,* 2009 WL 174909, p. 3-5 (E.D. Mich. 2009).

### 2.    The False and Misleading Statements Actually Deceived Potential Customers of Rubber Resources and Influenced Their Purchasing Decisions

The documentary and testimonial evidence in this case will show that customers and potential customers, purchasing decisions were effected after having been told by Green Edge and International Mulch that a licensee of the '514 patent was the sole legitimate source of colored rubber ground cover.  It is undeniable that false and misleading statements were disseminated to actual and potential customers of Rubber Resources, who thereafter decided that they should avoid potential legal problems by dealing with International Mulch instead.  This establishes a claim under Section 43(a); see, e.g., *Porous Media Corp. v Pall Corp.,* 173 F.3d 1109 (8th Cir. 1999)

Accordingly, the second and third prongs of the *Zenith* test are satisfied as well, in that potential customers of Rubber Resources were deceived by the false representations of patent

-28-

validity and that the patent licensees were the sole legitimate source of the patented product, and

that they altered their purchasing decisions accordingly.

### 3.    The False and Misleading Statements Entered Interstate Commerce

The false and misleading statements were made in letters sent in the United States Mail;

to potential customers who traveled from many states to attend trade shows; in advertising

brochures that were generally disseminated and in publications that can be read on the internet.

The statements were not made privately, but were publicly spread far and wide.  The "interstate

commerce" element of the *Zenith* test is met.

### 4.    The False and Misleading Statements Were Made In Bad Faith

As set forth above, the *Zenith* court defined "bad faith" to mean knowledge that the patent

under which rights are claimed is invalid, unenforceable, or not infringed.  The many ways in

which International Mulch, Green Edge, Judy Smith, Lee Greenberg and Michael Miller knew

that claims of infringement under the '514 patent were objectively baseless have been

summarized above and will be demonstrated through testimony at trial.

 What is significant in this case, however, is not just the knowledge of the disqualifying

prior art and the advice of counsel that it was invalidating, but the level of deceit that surrounded

both the application for, and the continued assertion of the validity of the '514 patent.  At the

application stage, as set forth above, Green Edge made a false disclaimer to avoid the Patent

Office's original finding of invalidity.  After Judge Medler found the '514 patent to be obvious in

light prior art supplied to her by Pierceton Rubber, neither Green Edge nor International Mulch made any attempt to examine or investigate the prior art on which Judge Medler had based her decision. Instead, they elected to "bribe" the beneficiary of that invalidity decision to abandon the litigation and to agree to a stipulated order that, on the face of it, appeared to provide support for their continued marketplace assertions of patent exclusivity.

After International Mulch and Green Edge learned of yet another piece of disqualifying prior art, the Jakubisin patent, again they did not disclose this to anyone but rather entered into a "Confidentiality Agreement" and a Settlement Agreement in which International Mulch agreed to drop *its* claim that the '514 patent was invalid in exchange for Green Edge's agreement to pursue infringement claims against companies identified by International Mulch. Even after having been informed by Rubber Resources that its method of manufacture was identical to that described in Jakubisin, the Lanham Act Defendants did no investigation to determine whether that was true.

The assertion of objectively baseless infringement claims with deliberate and willful intent to obliterate other companies in the market place is the epitome of bad faith as defined by *Zenith;* indeed, it is difficult to imagine any more reprehensible set of facts and circumstances than the ones present in this case. Rubber Resources has satisfied the "bad faith" prong of the *Zenith* test.

5.      **The False and Misleading Statements Resulted In Actual and Probable Injury to Rubber Resources, Entitling It to Damages**

Once a plaintiff has established liability for false, misleading or deceptive trade practices under Section 43(a) of the Lanham Act, the plaintiff is entitled to damages as set forth in Section 35 (a) of the Act.  That section states in relevant part:

> When a violation … under section 1125(a)… shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled … to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

Lanham Act §35(a) (15 USC §1117).

In *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 969 (D.C. Cir. 1990), the court identified an entire gamut of damages that could be claimed by a victim of false, misleading and unfair marketplace activities.  These damages include:  1) profits lost by the plaintiff on sales diverted to the bad actor and harm to the plaintiff's good will, *Porous Media Corp. v Pall Corp.,* 173 F.3d 1109 (8th Cir. 1999) (awarding damages for loss of goodwill).

The Tenth Circuit in *Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513 (10th Cir 1987), has likewise found that the burden on the plaintiff to prove damages is somewhat relaxed for §43(a) actions because the nature of the damages can be hard to prove with specificity.  As the court stated in *Brunswick*: "where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may be only an approximation."

The statutory language of Section 35(a) of the Lanham Act, and the cases that have considered damage claims for violations of Section 43(a) of the Act, have made it clear that the goal of protecting competitors and customers from false and misleading statements is of sufficient importance that the plaintiff should be given great latitude in his theory of damages, and that plaintiff is entitled to be compensated in the amount that justice requires in order to restore the plaintiff to the position that it would have enjoyed had the false claims not been made.

Section 35(a) of the Lanham Act further provides that actual damages may be multiplied by up to three times if the actual monetary damages proven up are insufficient to adequately compensate the plaintiff for the harm it has sustained.  This enhancement provision was specifically designed to ameliorate the difficulty of proving actual damages.  *See, Ramada Franchise Systems, Inc. v. Boychuk* 283 F.Supp.2d 777, 791-2 (N.D.N.Y. 2003), citing *Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 105 (2d Cir. 1988); see also, *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1127 (5th Cir.1991) ( ". . . enhancement could, consistent with the "principles of equity" promoted in [§35] provide proper redress to an otherwise under compensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct.")

### III.    Rubber Resources Did Not Infringe the '514 Patent

The evidence will show that Rubber Resources practices Jakubisin in its manner of manufacturing synthetic rubber mulch.   It a black letter rule of patent law that any product which infringes, if it is manufactured and sold after the issuance of a patent will be determined to

anticipate the patent if it is established that the product was manufactured and sold prior to the issuance. *Schering Corp. v. Geneva Pharmaceuticals,* 339 F.3d 1373, 1379 (Fed. Cir. 2003) ("That which infringes if later, anticipates if earlier."); see also, *Bristol Myers Squibb Co. v. Ben Venue Labs, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001).

What this means in practical terms is this:  if enforcing the '514 patent would allow Green Edge to exclude the public (e.g., Rubber Resources) from practicing the prior art, then that claim is anticipated by the prior art. *See, Atlas Powder Company v. Ireco,* 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Upsher-Smith Laboratories v. Pamlabs LLC,* 412 F.3d 1319, 1323 (Fed. Cir. 2005). This is true even if certain characteristics - such as "looking like" or "imitating" natural mulch are not disclosed in the prior art, if practicing the prior art naturally results in a product that has those characteristics. *Perricone v. Medicis Pharmaceutical Corp.,* 432 F.3d 1368, 1383 (Fed. Cir. 2005).

The evidence will show that by practicing Jakubisin, Rubber Resources produces the product that Green Edge alleges to infringe on the '514 patent.   As  matter of law, however, Rubber Resources cannot infringe the '514 patent because either a) Jakubisin is anticipating prior art, which would invalidate the '514 patent  or b) Jakubisin is not anticipating prior art, in which case practicing it would  not infringe the '514 patent.[6]

_____

[6]     Even after having been informed by Rubber Resources that it practiced Jakubisin, Green Edge did nothing to investigate whether that assertion was true.  Before prosecuting an infringement claim, however, the patent holder and his counsel *are required to* make that investigation.  Evidence at trial of this failure to investigate will further support the bad faith claims under the Lanham Act and Rubber Resources anticipated post-trial motion under 35 U.S.C. 285 and Federal Rule of Civil Procedure for reimbursement of the attorneys' fees it has incurred in defending this litigation.

Moreover, the evidence will show that the colorant Rubber Resources uses contains a binder; that the binder is very sticky and makes the individual rubber particles stick together, and that figuring out how to keep this from happening was a challenge to his manufacturing process. Green Edge, however, distinguished the invention claimed in the '514 patent from the prior art by informing the Patent Office that the prior products cannot be made without a binder.  Dale Hawker will testify that his ground cover product likewise cannot be made without a binder; if the use of a binder patentably distinguishes prior art from the '514 patent, as Green Edge informed the Patent Office, then Rubber Resources use of a binder also patentably distinguishes Rubber Resources' synthetic ground covering from the invention claimed by the '514 patent.

## CONCLUSION

Based on the legal principles as set forth above, the deceptive marketplace conduct by Green Edge, International Mulch, Lee Greenberg, Judy Smith and Michael Miller constitute bad faith violation of section 43(a) of the Lanham Act.  The '514 patent is invalid pursuant to 35 U.S.C. §§ 102, 103 and 112 and the Lanham Act Defendants knew it.  They collectively decided to nonetheless assert a patent monopoly; claim that International Mulch was the sole non-infringing source of colored rubber ground cover and to continue to prosecute the baseless claims of patent infringement in order to drive all other companies out of the business.  They nearly succeeded. Rubber Resources is entitled to a determination that the '514 patent is invalid and not infringed, and to be compensated for the damage caused by the bad faith unfair trade practices of the Lanhamn Act Defendants.

-34-

Respectfully submitted

By:    /s/ Ronald D. Foster
Ronald D. Foster
Law Offices of Ronald Foster
P.O. Box 2706
South Bend, IN 46614
(574) 236-5973
Counsel for Rubber Resources, Ltd., LLP

CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2011 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all attorneys of record:

/s/ Ronald D. Foster