UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREEN EDGE ENTERPRISES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   4:02CV566TIA |
| ) | |
| RUBBER MULCH ETC., LLC, ) | |
| ) | |
| Defendant. ) | |

### *PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW*

Plaintiff ("Green Edge") submits this memorandum in support of its motion for judgment as a matter of law on the claims and defenses of patent invalidity asserted by Rubber Resources and International Mulch ("defendants").

## I. INTRODUCTION

The Court is authorized to grant judgment as a matter of law where a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Fed.R.Civ.Proc. 50(a)*.  That is the case here.  Green Edge's patent the "'514 Patent") "enjoys a presumption of validity, that can be overcome only through clear and convincing evidence." *University of Rochester v. G. D. Searle & Co. Inc.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (citations and internal quotations omitted).  As discussed below, while defendants have made a multi-pronged attack on Green Edge's patent, there is no clear and convincing evidentiary basis for the jury to find for the defendants on any of their invalidity claims and defenses.

## II. DISCUSSION

### A.   Anticipation.

Title 35 U.S.C. § 102(a) and (b) codify the "anticipation" restriction on patentability and provide in relevant part:

> A person shall be entitled to a patent unless —
>
> (a)   the invention was known or used by others in this country, or patented or described in a printed publication in this country or a foreign country, before the invention thereof by the applicant for patent ... or
>
> (b)   the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...

To find that a patent is invalid due to anticipation, "the record must show by clear and convincing evidence that the claimed invention was in public use before the patent's critical date." *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009). Defendants' evidence on this issue was far from clear, and certainly not convincing.

"Invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently..." *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000); *see also Jamesbury Corp. v. Litton Indus. Prod.*, 756 F.2d 1556, 1560 (Fed. Cir. 1985) (no anticipation by a prior art disclosure that is only "substantially the same" as the claimed invention), *overruled on other grounds by A.C. Aukerman*

-2-

*Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992). Defendants presented no such evidence.

"[T]he exclusion of a claimed element from a prior art reference is enough to negate anticipation by that reference." *Atlas Powder Co. v. E. I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1574 (Fed. Cir. 1984).

Specific evidence is required to invalidate a patent as anticipated:

> Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.... The testimony is insufficient if it is merely conclusory.
>
> It is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage. Indeed, to accept confusing or generalized testimony as evidence of invalidity is improper.

*Schumer*, 308 F.3d at 1315-16 (citations omitted). Defendants presented no such evidence.

### 1. The Jakubisin '172 patent.

Defendants contend the Jakubisin '172 patent anticipated Green Edge's '514 Patent, interpreting the Jakubisin '172 patent very broadly and claiming the methods of these two patents are the same. The patents, however, show clear differences in their methods, claims, and limitations. As such, the Jakubisin '172 patent does not, by clear and convincing evidence, anticipate the '514 Patent.

Green Edge's '514 Patent discloses a method for forming a "synthetic mulch sized, shaped and colored to imitate a natural mulch." The Jakubisin '172 patent instead describes a method for forming playground "fall zone material." The material disclosed in the Jakubisin '172 patent is not of a size, shape, or color that imitates natural mulch.

Defendants assert that the rubber particles in the '172 Patent are identical with those specified in the '514 Patent because each patent discloses that the particles originate from the same source. To the contrary, the Jakubisin fall zone material are rubber "slivers" with a "preferred size range of .75–1.5 inches in length and 0.050–.2 inches in thickness." This is in contrast to the much larger material used in the '514 Patent. This size and shape is closer to a piece of straw than a piece of mulch.

Additionally, the '172 Patent describes *heating* the rubber particles to make the rubber "tacky." The Jakubisin Patent thus teaches an alteration of the rubber not called for in the '514 Patent. The claims of the '514 Patent do not require heat. To the contrary, heating could adversely affect the appearance of the rubber particles.

Unlike the Jakubisin '172 patent, the '514 Patent discloses a process of "embossing" the rubber particles and the addition of "an amount of water based acrylic colorant" to "imitate a natural mulch." The Jakubisin '172 patent, in contrast, merely discloses "a protective, decorative film of weather-resistant color fast resin." The '172 patent makes no reference to this protective "film" imitating

-4-

natural mulch.

The process of coloring the rubber also differs between the two patents. The '514 Patent calls for "thoroughly mixing the colorant and the rubber particles to form a colored synthetic mulch" preferably in an agitating tank. The Jakubisin '172 Patent instead claims a process where the protective film is sprayed on the heated, tacky rubber as it falls through a chute or drop zone of some kind. Thus, one requires mixing while the other requires spraying through a chute.

Similarly, the protective film needed to practice the Jakubisin '172 patent is estimated to be 40–50% by weight. The '514 Patent uses far less coating material, only about 3-10% by weight.

Although both patents call for rubber and colorant, the Jakubisin '172 patent differs significantly from the subject '514 Patent. As shown above, these differences include but are not limited to: the size, shape, dimension, and surface of the rubber; the colorant systems used; the manner of applying the colorants (spray vs. mixing); and the manner of preparing the rubber for color (heating vs. not heating). These differences result in very different products — a fall-zone material versus a natural-looking mulch. Because invalidation by anticipation requires that a single piece of prior art contain *all* the same limitations and claims, the Jakubisin '172 patent does not present clear and convincing evidence that the '514 Patent was anticipated.

### 2. The Funk and Javorek products.

Defendants also claim that Green Edge's invention was anticipated by two unpatented products purportedly offered for sale before Green Edge applied for its

patent October 1, 1997, the Funk product and the Javorek product. The evidence proffered by Mr. Funk, however, was not sufficiently corroborated, and he had no reference that disclosed, either expressly or inherently, each and every element of the '514 Patent. Courts do not give credence to uncorroborated statements in patent litigation because of the inherent unreliability of individual's memories, especially years after the fact. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

Although we have not yet heard Mr. Javorek's testimony, his deposition testimony was similarly deficient. Green Edge thus anticipates his trial testimony will be the same.

There is no clear and convincing evidence that the Funk or Javorek products anticipated the '514 Patent.

**B.     Enablement.**

"The enablement requirement of 35 U.S.C. § 112 requires that the specification adequately discloses to one skilled in the relevant art how to make, or in the case of a process, how to carry out, the claimed invention without undue experimentation." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1358 (Fed. Cir. 1999); *see also Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) (patent does not fail the enablement requirement "even if some experimentation is necessary").

Defendants contend that Claims 1–4 of the '514 Patent are indefinite because of the presence of the phrase "looks like." The Patent Office's determination that

the description was sufficiently definite to merit acceptance of the application is entitled to deference. Certainly, it is not unclear to say that one thing looks like another. One ordinarily skilled in the art would understand the limitations described in the '514 claims, which is the standard for definiteness. *Process Control*, 190 F.3d at 1358.

Defendants also contend that the colorant is not adequately disclosed so as to enable practice of the invention. This argument fails for two reasons. First, the description in the '514 Patent **did** enable PolyOne and other manufacturers to formulate an adequate water-based acrylic coating with minimal experimentation. There is no indication anywhere in the record that the personnel at these other companies were more than ordinarily skilled at formulating coatings or had access to some secret information not disclosed in the '514 Patent. This is *prima facie* evidence that the description in the '514 Patent was sufficient for an ordinarily-skilled reader to practice the invention without undue experimentation.

Defendants presented no evidence on any of the factors to be considered for enablement without undue experimentation. These include the quantity of experimentation necessary, the amount of direction or guidance presented, the presence or absence of working examples, the nature of the invention, the state of the prior art, the relative skill of the those in the art, the predictability or unpredictability of the art, and the breadth of the claims. *Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 418 F.3d 1326, 1337 (Fed. Cir. 2005)].

C.  Best Mode.

Title 35 U.S.C. § 112 provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, *and shall set forth the best mode contemplated by the inventor of carrying out his invention.*

"A holding of invalidity for failure to disclose the best mode requires clear and convincing evidence that the inventor both knew of and concealed a better mode of carrying out the claimed invention than that set forth in the specification." *Teleflex, Inc. v. Ficosa North American Corp.*, 299 F.3d 1313, 1330 (Fed Cir. 2002).

"The best mode requirement differs from the enablement requirement, for failure to enable an invention will produce invalidity whether or not the omission was deliberate, whereas invalidity for omission of a better mode than was revealed requires knowledge of and concealment of that better mode." *Cardiac Pacemakers, Inc. v. Guidant Sales Corp.*, 381 F.3d 1371, 1378 (Fed. Cir. 2004). "[T]he existence of a best mode is a purely subjective matter depending upon what the inventor actually believed at the time the application was filed." *Bayer AG v. Schein Pharmaceuticals, Inc.*, 301 F.3d 1306, 1314 (Fed. Cir. 2002).

> Compliance with the best mode requirement is a question of fact which involves a two-pronged inquiry. The first prong is subjective, focusing on the inventor's state of mind at the time he filed the patent application, and asks whether the inventor considered a particular mode of practicing the invention to be superior to all other modes

-8-

> at the time of filing. The second prong is objective and
> asks whether the inventor adequately disclosed the mode
> he considered to be superior. With respect to both the
> first and second prongs, the best mode inquiry is directed
> to what the applicant regards as the invention, which in
> turn is measured by the claims.

*Teleflex*, 299 F.3d at 1330 (citations and internal quotations omitted).

### 1. Subjective Prong.

This first prong, the question of intent is determinative in this case. "Before an inventor can conceal a best mode, the record must first show his appreciation of the superiority of one mode over those modes disclosed in the specification." *Minco Inc. v. Combustion Engineering*, 95 F.3d 1109, 1116 (Fed. Cir. 1996). Even if one adopts defendant's [incorrect] view of the best mode — the Futura product, rather than the water based acrylic systems that Futura exemplifies — there is no evidence that the inventors, Greenberg and Smith, understood that there was any distinction between "Visichrome" and "Product 24009" at the time they applied for the '514 Patent. The evidence is that as far as the they knew, Visichrome and Product 24009 were the same thing. There certainly is not clear and convincing evidence that Greenberg and Smith did not believe they were disclosing the Futura product used in their invention when they disclosed it as Visichrome.

Defendants take a slightly different tack, arguing that the disclosure of water-based acrylics *such as* Futura's product as the best mode of practicing the coloration portion of the '514 Patent was insufficient because Green Edge knew Futura's coating was **the** best mode at the time. This position is not supported by

-9-

the evidence. There is nothing in the record to suggest that Greenberg and Smith believed that Visichrome was better than all other similar water based acrylics. Rather, it was just the one they used and an example of the preferred type of coating. Green Edge described both the specific subcategory of coatings it preferred and an example of that subcategory.

### 2.   Objective Prong.

Although the '514 Patent innocently gives the wrong name when disclosing an example of the best mode, the description of the best mode in the '514 Patent is specific enough to satisfy the objective-adequacy prong. It is not necessary to disclose supplier or trade name information in a patent if what is disclosed is adequate to allow someone skilled in the art to carry out the best mode of the invention. *Minco*, 95 F.3d at 1116.

Plaintiff's expert, Steve Callan, testified that the information disclosed in the '514 Patent was sufficient to allow a person skilled in the art of coatings to carry out the best mode of the invention. And there is no clear and convincing evidence to the contrary.

Moreover, the abstract question of whether the description was enough to allow a skilled person to practice the best mode was made concrete by the example of PolyOne. When Futura stopped producing the colorant for Green Edge, Green Edge was able to go to PolyOne, show them the '514 Patent, and have PolyOne produce the colorant they needed — all without any additional technical information. That some minimal experimentation and tinkering by PolyOne

preceded production does not negate the adequacy of the disclosure. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). *See also Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1385 (Fed. Cir. 1986).

### D. Obviousness.

An invention is obvious,

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Title 35 U.S.C. § 103.

A determination of obviousness requires analysis of the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art at the time the invention was made. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

Obviousness of a patent is a question of law, though with an important caveat. "That the question is 'legal' does not mean that 'to a judge' may be substituted for the statutory phrase 'to one of ordinary skill in the art'. Thus the obvious/nonobvious question is not answerable by a judge on the sole basis of what he or she thinks 'ought' to be patentable under § 103." *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1558 (Fed. Cir. 1986) (citations omitted).

A court's obviousness inquiry "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of

the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). In determining the obviousness of an invention, however, the jury must determine "if the differences between [the invention] and the prior art are such that the subject matter **as a whole** would have been obvious at the time the invention was made to a person having ordinary skill in the art." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000) (emphasis added).

The Patent Office conducted its own search for prior art. It then reviewed the prior art it located, as well as that disclosed by Greenberg and Smith. Despite its awareness of the existence of other synthetic mulch products, the Patent Office issued the '514 Patent. Defendants simply discount the Patent Office's review and disregard the significant and patentable distinctions between Green Edge's invention and the prior art. "[W]hen the prior art before the court is the same as that before the PTO, the burden on the party asserting invalidity is more difficult to meet." *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 447 (Fed. Cir. 1986).

The '514 Patent specifically addresses the existence of prior natural and synthetic mulches. The Patent Office accepted the distinction drawn by Green Edge from the prior art—that critical to the development of the invention was the size and dimensions of the rubber in conjunction with the type and amount of colorant used, as well as the final form of the product as loose fill rather than as a pad. The '514 Patent further disclosed that the rubber was important "because rubber, unlike

other synthetic materials, is easily colored, can be cut and shaped to look like a variety of different mulches, and appears to hold more water than other types of synthetic materials, such as plastic." The '514 Patent further states that "[i]n addition to being made of rubber, the present synthetic mulch includes an amount of water based acrylic colorant." The colorant that Green Edge developed did not wash off the rubber when contacted by water, as was prevalent with many earlier attempts at formulating synthetic rubber. The '514 Patent was a new invention over prior synthetic mulches and the Patent Office correctly found that the '514 Patent disclosed a novel invention.

Defendants attempt to gloss over the differences between the '514 Patent and other prior inventions, ignoring the important distinctions between Green Edge's process and product when compared with prior art. They assert that the Byrne '731 patent, which involves colored rubber particles pressed into a unitary pad, renders the '514 Patent obvious. The Patent Office considered the '731 Patent as prior art and found the '514 invention to be non-obvious. Defendants contend that the Patent Office only reached this conclusion because of the "inaccurate disclaimer" of a binder in the '514. The Court already rejected this argument in its *Markman* order, as the argument fails to appreciate the difference between binding numerous pieces of rubber to each other versus binding a coating to a piece of rubber.

To the extent any doubt remains regarding the Patent Office's finding of non-obviousness, such doubt does not rise to the level of undisputed clear and convincing evidence necessary to support a finding of invalidity.

Further, the scope and content of the prior art can not support a finding of obviousness, as they sources relied upon by defendants are materially different than Green Edge's invention. The Jakubisin '172 and Byrne '731 patents proceed down different roads from the claims of the '514 Patent because each teach an alteration of one of the components of the invention. Jakubisin teaches one to heat rubber to make it tacky before coloring, while Byrne teaches one to glue small pieces of rubber together to make a mat. The '514 Patent does not call for these additional steps of heating or glueing —indeed, either additional step would be detrimental to achieving the natural-looking loose fill called for in the '514 Patent. Green Edge's invention is not, therefore, the natural result of following the lessons of these two patents.

Defendants' argument for obviousness depends primarily upon combining elements of each of the prior art references to invalidate the '514 Patent. "When an obviousness determination relies on the combination of two or more references, there must be some suggestion or motivation to combine the references." *Smiths Industrial Medical Systems v. Vital Signs*, 183 F.3d 1347, 1356 (Fed. Cir. 1999). "[T]he relevant inquiry is whether there is a reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Id.* There is no clear and convincing evidence in this record that would support such a finding.

Under *Graham*, the test is whether the invention "would have been obvious at the time to a person skilled in the art . . ." 383 U.S. at 15. Specific factual

-14-

findings are appropriate to ascertain the level of skill in the art, including: (1) the types of problems encountered in the art; (2) the prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology; and (5) the educational level of active workers in the field. *Ruiz v. A. B. Chance Co.*, 234 F.3d 654, 666 (Fed. Cir. 2000).

Defendants have offered no clear and convincing evidence that one reasonably skilled in the art would be familiar with all of the alleged prior art, or that this particular manner and method of making a synthetic colored rubber mulch would be obvious to such a person. Simply arguing in hindsight that combining certain aspects of the Jakubisin and Byrne Patents (and ignoring other aspects of those patents) was obvious does not meet the heavy burden imposed on those seeking a judgment invalidating a patent.

The colorant Green Edge used was not obvious from these prior references. During the research period 1995 to 1997, neither Green Edge nor Futura were aware of any coating that would adhere to vulcanized rubber. The parties together developed a water based acrylic coating system for rubber mulch. None of the prior references discusses the use of such coloration. This innovation shows the '514 Patent was a true invention in light of the ordinary skill in the art at the time. The invention identified in the '514 Patent represented a significant advance in the art as compared to the natural or more primitive synthetic mulches on the market. Especially given the problems which existed at the time of invention with the use and coloration of vulcanized rubber, the invention disclosed in the '514 Patent

would not have been the obvious product of "inferences and creative steps that a person of ordinary skill in the art would employ," as described in *KSR*, meaning that it was not obvious.

Green Edge's synthetic mulch created an industry where there was none before. It was a true invention, and no reasonable jury could find it was obvious.

### III. CONCLUSION

Defendants' all-out attack on the '514 Patent was unavailing. They made every argument imaginable in an effort to invalidate the Patent, and none of them has a sufficient evidentiary basis to make a jury question. There simply is no clear and convincing evidence by which a jury could find the Patent invalid, and for this reason, the Court should enter judgment as a matter of law on every claim and defense of patent invalidity asserted by the defendants.

Respectfully submitted,

GREEN JACOBSON, P.C.

By:    /s/ Allen P. Press
      Allen P. Press #39293 MO
      7733 Forsyth Blvd., Suite 700
      Clayton, MO 63105

      Tel: (314) 862-6800
      Fax: (314) 862-1606

      Email: press@stlouislaw.com

      Attorneys for plaintiff and third-party
      defendants Green Edge Enterprises, LLC,
      Judy Smith, and Lee Greenberg

## CERTIFICATE OF SERVICE

The filing attorney certifies that on April 14, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.